J-S10044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| YEURIS ALMONTE-SENA | : | |
| | : | |
| Appellant | : | No. 746 MDA 2025 |
| | : | |

Appeal from the PCRA Order Entered May 27, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001226-2022

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 11, 2026**

Appellant, Yeuris Almonte-Sena, appeals from the May 27, 2025 order denying his first petition filed under the Post Conviction Relief Act (PCRA).[1] We affirm.

The PCRA court summarized the relevant facts and procedural history as follows:

> Law enforcement began investigating [Appellant] in February[,] 2021[,] after receiving a cybertip indicating that a user had uploaded five videos/images of child pornography to a Dropbox account. The cybertip provided the [internet protocol ("IP")] address for the device used to upload the files and identified the user as having the screenname "Yeuris Almonte" and an email address of "rdyeuris25@gmail.com." Using the location information associated with the IP address, the District Attorney's Office issued an administrative subpoena, which investigators sent to Comcast—the applicable internet service provider—to request

---

[1] 42 Pa.C.S. §§ 9541-46.

the name and address of the subscriber associated with the IP address. In response, Comcast disclosed that Maria Sena was the subscriber, with a billing address of 110 Millstone Drive, Mountville, Pennsylvania. Subsequent investigation revealed that Ms. Sena's son, [Appellant] Yeuris Almonte-Sena, resided at that address.

When law enforcement went to the house to investigate further, [Appellant] admitted that he had, in fact, viewed and uploaded child pornography. [Appellant] was not charged, but an Officer warned him that his conduct was criminal and could result in charges being filed if he continued. Nonetheless, despite that warning, law enforcement subsequently received additional cybertips [regarding] the same IP address indicating that [Appellant] continued to view and upload child pornography using social media platforms including Facebook, Snapchat, and TikTok.

Investigators obtained and executed a search warrant for [Appellant's] residence in November of 2021[,] during which [Appellant] provided his cell phone and laptop, as well as the password to access his cell phone. Investigators found numerous images and videos of suspected child pornography on [Appellant's] cell phone, at least three of which [Appellant] had uploaded and sent in a WhatsApp messaging chat that had over sixty participants. [Appellant's] cell phone also contained the email address associated with the Dropbox and Snapchat cybertips, as well as the Facebook, Snapchat, and TikTok applications identified in the cybertips.

On August 15, 2023, following a two-day jury trial, [Appellant] was found guilty of Possession of Child Pornography and Criminal Use of Communication Facility. The jury found that [Appellant] possessed between 201 and 500 videos and/or images depicting children ranging from prepubescent to 17 years old and that some portrayed or contained indecent contact with and penetration or attempted penetration of a child.

Following the jury's verdict and the completion of a Pre-Sentence Investigation, [the trial court] sentenced [Appellant] on December 18, 2023, to an aggregate, split sentence of one year less a day to two years less a day of incarceration, followed by five years of consecutive probation with the restrictive condition of house arrest with electronic monitoring for the first year. [Appellant] did not file a post-sentence motion or direct appeal but timely filed this counseled PCRA Petition on November 14, 2024. After

receiving the Commonwealth's Answer, [the PCRA court] issued a Notice of Intent to Dismiss without a hearing pursuant to Pa.R.Crim.P. 907(1). [Appellant] did not respond to [the PCRA court's] 907 Notice. [Appellant] filed the instant appeal following [the PCRA court's] May 27, 2025, final Order dismissing [Appellant's] PCRA Petition. At [the PCRA court's] direction, [Appellant] subsequently filed a Statement of Errors on June 25, 2025, and the Commonwealth responded on June 26, 2025.

PCRA Court Opinion (PCO), 7/14/25, at 1-3 (footnotes and citations to trial record omitted). Appellant raises three claims of error:

I.      Should trial counsel have moved to suppress the evidence given that under Pennsylvania law, Appellant had a reasonable expectation of privacy in the information behind his IP address such that the administrative subpoena statute is unconstitutional with respect to internet account information, and therefore, the police were required to obtain a search warrant supported by probable cause for his account information?

II.     Whether trial counsel should have moved to suppress the evidence because the search warrant for Appellant's house and electronics did not contain probable cause, was overbroad, was lacking in particularity, and did not contain any of the limiting language required by ***Commonwealth v. Green***[, 265 A.3d 541, 552 (Pa. 2021),] but instead expressly authorized a search for legal material, including adult pornography.

III.    Was trial counsel ineffective for calling a character witness but failing to request the jury instruction for evidence of good character, thereby rendering that testimony useless as the jury was not instructed on how important it was or how to evaluate it.

Appellant's Brief at 4-5.

Our standard of review of an order denying a PCRA petition is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed

- 3 -

unless there is no support for the findings in the certified record. ***Commonwealth v. Lambert***, 57 A.3d 645, 647 (Pa. Super. 2012).

We have held that "[i]n order for [a PCRA petitioner] to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Wiggins***, 248 A.3d 1285, 1288 (Pa. Super. 2021) (quoting ***Commonwealth v. Presley***, 193 A.3d 436, 442 (Pa. Super. 2018)). This requires "the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission." ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). We note that "prejudice is established where the truth-determining process was so undermined that no reliable adjudication of guilt or innocence could have taken place, *i.e.*, there is a reasonable probability that, but for counsel's error, the outcome of the trial would have been different." ***Commonwealth v. Jones***, 210 A.3d 1014, 1018–19 (Pa. 2019) (internal citation and quotation marks omitted). A PCRA petitioner must satisfy all three elements of the test; failure to meet any single prong of the test is fatal to an ineffectiveness claim. ***See Commonwealth v. Walker***, 36 A.3d 1, 7 (Pa. 2011).

Appellant's first claim alleges that trial counsel ineffectively failed to file "a motion to suppress challenging the use of administrative subpoenas in this

case." Appellant's Brief at 21. The Commonwealth issued a subpoena to Comcast in February of 2021, as Comcast owned the IP address supplied by the tipster. Comcast then disclosed the subscriber information associated with the IP, which led authorities to Appellant's home. Appellant argues that the statute authorizing the subpoena[2] is unconstitutional because he had a reasonable expectation of privacy in the information disclosed by Comcast,

---

[2] The administrative subpoena statute states, in relevant part:

(a) **Authorization**.—

(1) In an ongoing investigation that monitors or utilizes online services or other means of electronic communication to identify individuals engaged in an offense involving the sexual exploitation or abuse of children, the following shall apply:

(i) The following may issue in writing and cause to be served a subpoena requiring the production and testimony under subparagraph (ii):

\* \* \*

(D) An assistant district attorney designated in writing by a district attorney.

\* \* \*

(ii) A subpoena issued under subparagraph (i) may be issued to a provider of electronic communication service or remote computing service:

(A) requiring disclosure under section 5743(c)(2) (relating to requirements for governmental access) of a subscriber or customer's name, address, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, which may be relevant to an authorized law enforcement inquiry[.]

18 Pa.C.S. § 5743.1(a).

and thus the records at issue must be obtained via a search warrant supported by probable cause.[3] *See Commonwealth v. Robbins*, 647 A.2d 555, 558 (Pa. Super. 1994) ("A search occurs when the government intrudes on an area where a person has a constitutionally protected reasonable expectation of privacy.") (quotation marks and citation omitted).

Appellant's core legal challenge pertains to the applicability of the "third party" doctrine. "To have a reasonable expectation of privacy, one must intend to exclude others and must exhibit that intent." *Commonwealth v. Murphy*, 795 A.2d 997, 1005 (Pa. Super. 2002). The United States Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979). This "doctrine largely traces its roots to [*United States v.*] *Miller* [425 U.S. 435 (1976)]," which involved a government subpoena for bank records. *Carpenter v. United States*, 585 U.S. 296, 308 (2018). The *Miller* Court held that an individual lacks a reasonable expectation of privacy in bank records showing canceled checks, deposit slips, and monthly statements, as the information within those records was disclosed by Miller to the bank, and thus he voluntarily shared the information with third parties. Under *Miller*, Appellant would have no reasonable expectation of privacy in the Comcast records.

---

[3] The first visit to Appellant's home did not result in charges. Appellant argues that the search warrant obtained several months later was tainted by the initial investigation.

As Appellant emphasizes, in **Commonwealth v. DeJohn**, 403 A.2d 1283, 1289 (Pa. 1979), our Supreme Court declined to fully adopt **Miller** "when construing the state constitutional protection against unreasonable searches and seizures." Appellant recognizes that, in **Commonwealth v. Kurtz**, 294 A.3d 509 (Pa. Super. 2023) (**Kurtz I**), *aff'd*, 348 A.3d 133 (Pa. 2025) (OAJC) (**Kurtz II**), we addressed an Article I, Section 8 claim regarding "a search warrant directed to Google, Inc. for records of searches made with Google's search engine for [a rape victim]'s name or home address during the week preceding the July 2016 incident." **Id.** at 517. Google "returned a report that identified an [IP] address as having conducted two searches" of the victim's address hours before the attack. **Id.** Investigators then "determined through requests submitted to the American Registry of Internet Numbers and [Kurtz's] telecommunications service provider that the IP address corresponded to [Kurtz]." **Id.**

We held that the warrant which led to obtaining the IP was supported by probable cause; however, in the alternative, we also concluded that Kurtz lacked a reasonable expectation of privacy in his IP address. "By typing in his search query into the search engine and pressing enter, [Kurtz] affirmatively turned over the contents of his search to Google, a third party, and voluntarily relinquished his privacy interest in the search." **Id.** at 522. As to **DeJohn**, we noted that the Court there "ruled that Article I, Section 8 of the Pennsylvania Constitution provides broader protection to substantive bank records than the Fourth Amendment[,] but that a bank customer has no

- 7 -

legitimate expectation of privacy over basic account information, such as the name and address associated with an account." *Id.* at 520.

Appellant accepts that under *Kurtz I*, he lacked "a reasonable expectation of privacy in the publicly viewable IP address that is shared with other random third parties on the internet." Appellant's Brief at 27. To distinguish the case, he focuses on the information "behind" the IP, *i.e.* the subscriber and account information associated with the IP. *Id.* at 22 (asserting a "reasonable expectation of privacy in the account information behind the IP address"). Appellant also claims that authorities obtained much more than basic account information as they "also demanded information on when and for how long Appellant accessed the internet. This information is as sensitive as cellular location data because it establishes when Appellant was at home and what he was doing." *Id.* at 24. Therefore, Appellant concludes that the information the Commonwealth obtained via the subpoena is analogous to the cell phone records obtained via subpoena in *Carpenter*. *See Carpenter*, 585 U.S. at 309 ("Given the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection.").[4]

---

[4] Notwithstanding the holding in *Kurtz* that there is "no legitimate expectation of privacy over basic account information," *Kurtz*, 294 A.3d at 520, Appellant argues the case is "distinguishable ... because there, the defendant moved for suppression of his actual IP address itself." Appellant's Brief at 26. In addition to this distinction, Appellant cites our Supreme Court's Opinion Announcing the Judgment of the Court in *Kurtz II*, opining that "even the OAJC in *Kurtz*
*(Footnote Continued Next Page)*

We conclude that Appellant has failed to establish arguable merit to his ineffectiveness claim. "A claim has arguable merit where the factual

_____

[**II**] suggests that the information behind IP addresses may be protected." Appellant's Reply Brief at 5. He argues that the administrative subpoena statute allows authorities to obtain "subscriber's name, address, billing information, session times, and usage history," and thus goes beyond basic information. **Id.** at 4.

First, it is not clear that anything beyond basic account information was obtained in this case via the subpoena. The statute authorizes disclosure of "subscriber or customer's name, address, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, which may be relevant to an authorized law enforcement inquiry." **See** 18 Pa.C.S. § 5743.1(a)(1)(ii). It is not clear whether the Commonwealth obtained "information on when and for how long Appellant accessed the internet" via the subpoena. Appellant's Brief at 24. As the Commonwealth notes:

> [Appellant] has failed to ensure the administrative subpoena at issue in the certified record. Instead, [Appellant] references a copy of the Manor Township Police Report detailing what was provided by Comcast Communications in response to that subpoena which was appended as an exhibit to his PCRA Petition.

Commonwealth's Brief at 11. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Harlan**, 208 A.3d 497, 501 (Pa. Super. 2019) (quoting **Commonwealth v. Preston**, 904 A.2d 1, 6-7 (Pa. Super. 2006) (*en banc*)).

In any event, were we to reach the merits of his arguments, "counsel cannot be held ineffective for failing to anticipate a change in the law." **Commonwealth v. Drummond**, 285 A.3d 625, 645 (Pa. 2022) (quotation marks and citation omitted). We must assess counsel's performance based on the law in effect at the time of trial, and the language in **Kurtz I** indicates that basic account information is not protected. Therefore, to the extent Appellant relies on our Supreme Court's decision in **Kurtz II** as undermining **Kurtz I**, Appellant's counsel cannot be required to anticipate the Supreme Court's ruling.

averments, if accurate, could establish cause for relief." **Commonwealth v. Evans**, 303 A.3d 175, 182 (Pa. Super. 2023) (quoting **Commonwealth v. Stewart**, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*)). Appellant repeatedly refers to the Commonwealth obtaining **his** account information. **See, e.g.,** Appellant's Brief at 22 (arguing that "The Court should find that the police were required to obtain a search warrant to access Appellant's account information"), 24 (maintaining that Appellant "had a reasonable expectation of privacy in his account information even though it was stored with his internet service provider"). This assertion is belied by the record. As the PCRA court stated in its factual findings, "Comcast disclosed that Maria Sena was the subscriber, with a billing address of 110 Millstone Drive, Mountville, Pennsylvania. Subsequent investigation revealed that Ms. Sena's son, [Appellant] Yeuris Almonte-Sena, resided at that address." PCO at 2. Hence, the account belonged to Appellant's mother, not Appellant. This is not a mere technicality. As we have explained:

> A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy. Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination of whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

*Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa. Super. 2009) (citations omitted).

In this case, Appellant must establish a legitimate expectation of privacy in the account records for Comcast services, which were paid for by his mother. In *Commonwealth v. Benson*, 10 A.3d 1268, 1271 (Pa. Super. 2010), Benson "contend[ed] the trial court erred in denying his request to suppress certain telephone bills containing detailed call records obtained pursuant to a warrant issued upon T–Mobile telephone company in April 2008." We concluded that Benson had no valid Article I, Section 8 claim because a third party, his girlfriend, paid for the phone and merely authorized Benson to use it.

> It is clear after [*Commonwealth v.*] *Beauford* [475 A.2d 783, 791 (Pa. Super. 1984)], that, under the Pennsylvania Constitution, an individual has a reasonable expectation of privacy in his own cellular telephone records. However, there is no support in *Beauford* for the proposition that an individual has a reasonable expectation of privacy in the cellular telephone records of a third party. In *Beauford*, this Court stated that the fact that the telephone company has access to numbers dialed from a particular telephone was irrelevant to the existence of a legitimate expectation of privacy regarding such information because an individual has no choice in the matter. By accepting the fact that the telephone company collected the information for billing purposes the caller was not acquiescing to the turning over of this information to a third party. *Beauford*, 475 A.2d at 789–90.
>
> . . . .
>
> While the Pennsylvania Constitution affords greater protection against unreasonable search and seizure than the Federal Constitution . . . it does not afford an individual a legitimate expectation of privacy in the telephone bills of a third party, particularly where, as here, the third party agreed to turn over duplicates of the bills to the police. . . . Thus, **while [Benson]**

- 11 -

**had use of the telephone, the bills in question were not his telephone bills.** The telephone in question was Tawanda Armour's and she is the one who received and had the obligation to pay the telephone bills containing the records of telephone numbers dialed. [Benson] had no legal right to request or control access to the information from the telephone company because he was not the owner of the telephone. He had no legitimate expectation of privacy in them.

*Id.* at 1273–74 (Pa. Super. 2010) (emphasis added).

Similarly, that Appellant's mother allowed him to use the internet service she paid for does not create a legal right to control access to his mother's records. While Appellant declares in conclusory fashion that the records are "his," the record establishes that Appellant merely used the service paid for by his mother, and, as in ***Benson***, "had no legitimate expectation of privacy in them." ***Id.*** at 1274. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious[.]" ***Kimmelman v. Morrison***, 477 U.S. 365, 375 (1986). Appellant's failure to establish a legitimate expectation of privacy precludes a finding of arguable merit as to the merits of his suppression claim. We therefore affirm the PCRA court's ruling on that alternative basis. ***Commonwealth v. Williams***, 977 A.2d 1174, 1177 (Pa. Super. 2009) ("It is well-settled ... that we may affirm the PCRA court's decision on any basis.") (citation omitted).

Appellant's second claim is that trial counsel "should have challenged the search warrant that authorized seizing Appellant's electronic devices and

searching his cell phone because the search warrant was overbroad, lacking in particularity, and devoid of probable cause." Appellant's Brief at 38-39. Appellant argues that the warrant "specifically asks for permission to search for 'all information,' not just information related to the crime under investigation." *Id.* at 39. He maintains the warrant "is overbroad" and should have been challenged on that basis. *Id.* at 42.

The warrant authorized the seizure and search of "computer equipment," with that term defined to include a large variety of devices. In turn, the warrant permitted a search of "[a]ny and all information and/or data" stored on "a computer or related components." Application for Search Warrant, 11/8/21, at 2. Additionally, the executing officers were authorized to seize, among other items:

> b. Any and all documentation and records, whether on paper or stored on magnetic media (including information stored within a computer), disclosing, describing, referring, reflecting, or adverting to pornographic images (child or adult), associated BIOS, driver software programs, and all peripheral equipment (LCD/CRT controller, modems, printers, scanners, video cameras/camcorders/VCRs, and other image capturing/reproducing devices).

*Id.* at 3.

Appellant asserts that the authorization to search for "pornographic images (child or adult)" is overbroad, as pornography depicting adults is generally legal. "There is no explanation for why the police would need to search for adult pornography or why they would need to search all data and not just for child pornography." Appellant's Brief at 41. Relatedly, Appellant

maintains the authority to "search all data, including paper records," is overbroad because it permitted a search of physical records, whereas this case involved the dissemination of child pornography on the internet. In sum, Appellant concludes there is "not ... a single limitation on the search. Instead, it just allows the officers to search for everything." *Id.* at 42. Appellant thus concludes that trial counsel was ineffective for failing to challenge the warrant as overbroad.

Appellant's overarching claim addresses the particularity requirement. "This Court has recognized that the particularity component subsumes two distinct, although often related, concepts." *Commonwealth v. Ani,* 293 A.3d 704, 716 (Pa. Super. 2023). We summarized the two concepts as follows:

> A warrant that is not "particular enough" permits "a search in terms so ambiguous as to allow the executing officers to pick and choose," which amounts to the rummaging that so offended the drafters of the federal and state constitutions. *Commonwealth v. Santner*, 308 Pa.Super. 67, 454 A.2d 24, 25 n.2 (1982). This first component thus ensures that the authorities are sufficiently limited in what they can seize. The second concept is overbreadth. A warrant can be clear in terms of what will be seized, thus ensuring that the authorities' discretion does not permit a general rummaging. But if the warrant allows authorities to seize items for which probable cause does not exist, it may be overbroad. *Id.*
>
> . . . .
>
> Our Supreme Court has identified these defects as "symptoms of the same disease."
>
> > Moreover, for particularity purposes, we have clarified that although some courts have treated overbreadth and ambiguity as relating to distinct defects in a warrant, *see Commonwealth v. Santner*, 308 Pa.Super. 67, 454 A.2d 24, 25 n.2 (1982), "both doctrines diagnose symptoms of

- 14 -

the same disease: a warrant whose description does not describe as nearly as may be those items for which there is probable cause." ***Grossman***, 555 A.2d at 899-900.

*Johnson*, 240 A.3d at 584.

*Id.* at 716-17.

Our starting point is determining for which items the Commonwealth established probable cause. "[I]n any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause." ***Commonwealth v. Grossman,*** 555 A.2d 896, 900 (Pa. 1989). Appellant implicitly concedes that the Commonwealth established probable cause to search for child pornography in general.[5] Appellant's specific complaints must be examined in that context. We agree there was no probable cause to search for "adult pornography." However, we disagree that the warrant authorized seizing and/or searching for adult pornography. For reference, we quote the pertinent scope of material the executing officers were permitted to seize and search:

b. Any and all documentation and records, whether on paper or stored on magnetic media (including information stored within a

_____

[5] Appellant's argument on this point is not consistent. He claims that the warrant was "devoid of probable cause." Appellant's Brief at 39. This suggests that the Commonwealth failed to establish probable cause to search for anything. Yet, Appellant later argues: "There is no explanation for why the police would need to search for adult pornography or why they would need to search all data **and not just for child pornography**." *Id.* at 41 (emphasis added). This argument recognizes that the Commonwealth established probable cause to search for child pornography.

- 15 -

computer), disclosing, **describing, referring, reflecting, or adverting to pornographic images (child or adult)**, associated BIOS, driver software programs, and all peripheral equipment (LCD/CRT controller, modems, printers, scanners, video cameras/camcorders/VCRs, and other image capturing/reproducing devices).

Application for Search Warrant, 11/8/21, at 3 (emphasis added).

The bolded text indicates that the executing officers were permitted to seize and search evidence of child pornography concealed as or combined with legal adult pornography. Regarding the reference to physical records, the training and experience portion of the attached affidavit of probable cause states: "Collectors of child pornography sometimes possess and maintain their 'hard copies' of child pornographic material; that is, their pictures, films …." ***Id.*** at 12.

Finally, and contrary to Appellant's final claim, we conclude that the warrant contains limiting language. We agree with the PCRA court's rationale on this point, as set forth in the notice of intent to dismiss.

> The Pennsylvania Supreme Court has held that in cases involving child pornography, a warrant that authorizes law enforcement personnel to seize and search a wide array of electronic devices and associated hardware, etc., is not overbroad where "self-limiting language" narrows a search only for evidence relating to the possession and/or distribution of child pornography. ***Commonwealth v. Green***, 265 A.3d 541, 552 (Pa. 2021).
>
> . . . .
>
> In [Appellant's] case, the warrant itself contained "self-limiting language" in paragraphs 5(c), 5(d), and 6.[6] The affidavit of

---

[6] The limiting language provided as follows:
*(Footnote Continued Next Page)*

- 16 -

probable cause was explicitly incorporated into the search warrant application. The extensive narrative therein explained that an internet-capable device associated with [Appellant's] IP address/residence was believed to have viewed and/or uploaded videos and images of suspected child pornography. The affidavit also outlined that searching and seizing information from computers and devices capable of internet access, such as smartphones, requires investigators to seize all electronic storage devices—along with related peripherals—to be searched later by a qualified computer expert. The affidavit explained … "[t]his affidavit is made in support of an application for a search warrant to search for and seize instrumentalities, fruits, and evidence of violations of Title 18, Section 6312," which deals only with child pornography. (Appl. for Search Warrant, Aff. Of Probable Cause, Nov. 8, 2021, ¶15.) Read as a whole, the search warrant and affidavit provided probable cause to search for and seize the items enumerated in the warrant and clearly limited the scope of the search to evidence of the crime of possession and/or dissemination of child pornography. Here again, [Appellant's] claim of ineffective assistance must fail because trial counsel cannot be found ineffective for failing to advance a meritless claim.

---

[5]c.   Any and all information and/or data stored in magnetic or electronic form on computer media or on media capable of being read by computer or the aid of computer related equipment, as well as the forensic examination and data recovery from all computer related items seized involving the possession and dissemination of [c]hild [p]ornography.

d.   All data contained within the seized media as set forth above that may contain evidence pertaining to the possession and dissemination of [c]hild [p]ornography.

6.   Any and all child pornographic files (pictures or movies) and any other digital evidence relating to the possession and/or dissemination of child pornography, contained on the electronic storage media seized as a result of this search warrant, including file sharing software and/or configuration files.

Application for Search Warrant, 11/8/21, at 3.

Pa.R.Crim.P. 907 Notice, 3/6/25, at 2-3, n.1 (citation omitted).  We conclude that the warrant "prevented an indiscriminate or discretionary search of the home because any actions taken by the searching officers were restricted to only what could yield evidence of child pornography."  **Green**, 265 A.3d at 552.  Accordingly, we agree that the PCRA court properly dismissed this claim as "[c]ounsel will not be found ineffective for failing to raise a meritless claim." **Commonwealth v. Brown**, 196 A.3d 130, 151 (Pa. 2018) (citation omitted).[7]

_____

[7]  While we dispose of the claim on arguable merit grounds, we add that Appellant argues "[s]uppression is required for all evidence seized upon the execution of an overbroad warrant, including the items for which probable cause existed."  Appellant's Brief at 45 (citing **Grossman**, 555 A.2d at 900). He therefore presumes that a motion to suppress would have excluded all evidence.

However, we apply the severability doctrine, which "mandates that invalid portions of a search warrant may be stricken and the remaining portions held valid, as long as the remaining portions of the warrant describe with particularity the evidence to be seized." **Commonwealth v. Bagley**, 596 A.2d 811, 824 (Pa. Super. 1991).  The **Grossman** Court concluded that all evidence must be suppressed because "the warrant authorizing the seizure of 'all files' was unconstitutionally overbroad in its failure to describe as specifically as was reasonably possible the three files described in the affidavit for which there was probable cause."  **Grossman**, 555 A.2d at 900.  The **Grossman** Court did not discuss severability, and "a restriction of the doctrine is that it does not apply to general warrants."  **Ani**, 293 A.3d at 730.  The warrant in **Grossman** allowed a search of all files relating to over 2,000 clients.  Thus, the warrant in that case appeared to be "general" in character.

In contrast to **Grossman**, had Appellant successfully established that the warrant failed to address probable cause for certain items, _e.g._ "adult pornography," he errs in assuming that **all evidence** would be suppressed. Thus, Appellant's argument does not meaningfully account for the prejudice
_(Footnote Continued Next Page)_

Appellant's third and final claim is that trial counsel's failure to request a jury instruction for evidence of good character constituted ineffective assistance of counsel. As the PCRA court explained:

At trial, the Commonwealth presented evidence of numerous cybertips demonstrating that an internet user at [Appellant's] residence had used a device to upload and receive child pornography utilizing screennames and emails associated with [Appellant], as well as applications and web-based services found to have been accessed by [Appellant's] phone. All of these accounts were password protected. This evidence of guilt was so overwhelming that a jury instruction on character evidence could not have contributed to the verdict. Moreover, the jury did hear the very limited character evidence that was offered and was instructed on how to determine a witness's credibility. For these reasons, [Appellant has] failed to adequately plead and prove that [Appellant was] prejudiced by counsel's failure to request a jury instruction on character evidence and, accordingly, [Appellant's] claim does not warrant post-conviction relief.

Pa.R.Crim.P. 907 Notice, 3/6/25, at 3-4, n.1.

We agree with the PCRA court's analysis. Given the overwhelming evidence of Appellant's guilt, Appellant was not prejudiced by trial counsel's failure to request a jury instruction on character evidence. On this record, we do not discern no substantial likelihood of a different trial result had the jury instruction been requested and delivered, and therefore, we conclude that Appellant has failed to establish the prejudice prong of the test for ineffective assistance of counsel. *See Jones*, 210 A.3d at 1019.

_____

prong. *See Commonwealth v. Melson*, 556 A.2d 836, 839 (Pa. Super. 1989) ("Where the challenge is to a failure to move for suppression of evidence, the defendant must establish that ... if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable.").

After review, we conclude the PCRA court's denial of Appellant's PCRA petition is supported by the evidence of record and free of legal error. ***See Lambert***, 57 A.3d at 647.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/11/2026